# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW EDWARDS, et al., | Case No. 1:14-mc-00007-SAB |
| Petitioners, | ORDER DENYING PETITIONERS' MOTION TO COMPEL |
| v. | |
| CALIFORNIA DAIRIES, INC., | (ECF Nos. 1, 4, 8, 9, 10) |
| Respondent. | |

Petitioners (also referred to as Plaintiffs for underlying action) filed a motion to compel third party California Dairies, Inc. ("CDI" or "Respondent") to produce information pursuant to a subpoena duces tecum. On March 14, 2014, the parties filed a joint statement regarding the discovery disagreement.

A hearing on Petitioners' motion to compel was held on March 26, 2014. Counsel Elaine Byszewski appeared for Petitioners, and Counsel Deborah Coe and Jackson Waste appeared for Respondent. Following the hearing, the parties were provided an opportunity to file additional briefing. Having considered the pleadings and counsels' arguments made during the March 26, 2014 hearing, the Court issues the following order on Petitioners' motion to compel.

## I.

## PROCEDURAL HISTORY

On September 26, 2011, Plaintiffs Matthew Edwards and Georgia Browne, on behalf of

1

themselves and all others similarly situated, filed this class action against Defendants National Milk Producers Federation; Dairy Farmers of America, Inc.; Dairylea Cooperative, Inc.; Agrimark, Inc.; and Land of Lakes, Inc.[1]  In the action, Plaintiffs allege that the Defendants conspired to slaughter milk cows in order to artificially inflate milk prices from 2004 to the present in violation of state antitrust laws.  (Consolidated Amended Class Action Complaint 47,[2] Edwards v. National Milk Producers Federation, No. 3:11-cv-04766-JSW (N.D. Cal. Aug. 20, 2012), ECF No. 110.)  Currently pending in Edwards is a motion to certify the class.  (Id. at ECF No. 232.)  On March 5, 2014, Plaintiffs filed a second amended consolidated class action complaint; and the court continued the motion hearing to June 6, 2014.  (Id. at ECF No. 234.)

Meanwhile on October 7, 2013, Petitioners served the subpoena duces tecum which is the subject of the instant dispute on Respondent CDI.  (Decl. of Elaine T. Byszewski ¶ 4, ECF No. 4 at 19.)  Respondent objected to the subpoena and, after several attempts to meet and confer, the parties were unable to come to an agreement on production of the requested information.  (Id. at ¶¶ 5, 6, 7.)  On February 13, 2014, Petitioners filed the instant motion to compel Respondent to comply with the subpoena in the Eastern District of California.[3]  (ECF No. 1.)

A hearing on the motion was held on March 26, 2014.  (ECF No. 5.)  On April 18, 2014, Petitioners filed an amended motion to compel.  (ECF No. 8.)  Respondent filed an opposition to the amended motion to compel on May 9, 2014.  (ECF No. 9.)  On May 16, 2014, Petitioners filed a reply.  (ECF No. 10.)

## II.

## LEGAL STANDARD

Rule 45 of the Federal Rules of Civil Procedure authorizes the issuance of a subpoena to

---

[1] The Court takes judicial notice of Edwards v. National Milk Producers Federation, No. 3:11-cv-04766-JSW (N.D. Cal).

[2] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

[3] Respondent objects that the service of the motion to compel was improper as it was served electronically and they have not appeared in this action.  However, the Court notes that the motion to compel was also served by certified mail upon counsel for Respondent.  (ECF No. 1 at 19.)  Rule 5(b) provides for service upon a party's counsel by mailing the document.  Counsel is admonished to refrain from bringing frivolous arguments that waste the time of the parties and the Court.

command a nonparty to "produce designated documents, electronically stored information, or tangible things in that person's possession, custody, or control. . . ." Fed. R. Civ. P. 45(a)(1)(A)(iii). It is well settled that the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26(b) and 34. Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Service Center, 211 F.R.D. 648, 662 (D. Kan. 2003) (quoting Advisory Committee Note to the 1970 Amendment of Rule 45(d)(1) that the amendments "make it clear that the scope of discovery through a subpoena is the same as that applicable to Rule 34 and the other discovery rules."). Rule 34(a) provides that a party may serve a request that is within the scope of Rule 26.

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Relevancy is broadly defined for the purposes of discovery, but it does have "ultimate and necessary boundaries." Gonzales v. Google, Inc., 234 F.R.D. 674, 680 (N.D. Cal. 2006) (citations omitted). While discovery should not be unnecessarily restricted, discovery is more limited to protect third parties from harassment, inconvenience, or disclosure of confidential documents. Dart Industries Co., Inc. v. Westwood Chemical Co., Inc., 649 F.2d 646, 649 (9th Cir. 1980). In deciding discovery disputes, courts must be careful not to deprive the party of discovery that is reasonably necessary to their case. Dart Industries Co., Inc., 649 F.2d at 680. "Thus, a court determining the propriety of a subpoena balances the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena." Gonzales, 234 F.R.D. at 680.

## III.

## ANALYSIS

Defendants in Edwards brought a motion to dismiss, in part, alleging that Plaintiffs' claims were barred by the filed rate doctrine. (Motion to Dismiss, Edwards, No. 3:11-cv-04766-JSW (N.D. Cal. Dec. 22, 2011), ECF No. 65.) "The [filed rate] doctrine is a judicial creation that arises from decisions interpreting federal statutes that give federal agencies exclusive jurisdiction to set rates for specified utilities, originally through rate-setting procedures involving the filing of

1  rates with the agencies." E. & J. Gallo Winery v. EnCana Corp., 503 F.3d 1027, 1033 (9th Cir.
2  2007).

3  Milk and milk product prices paid for the production of raw milk are regulated by Federal
4  Milk Marketing Orders ("FMMO"). Carlin v. Dairy America, Inc., 705 F.3d 856, 859 (9th Cir.
5  2013). As relevant here, the FMMO sets a minimum price that a producer receives for raw milk.
6  Carlin, 705 F.3d at 859. The prices are determined weekly. Id. at 861. In E. & J. Gallo Winery,
7  the Ninth Circuit concluded that, to the extent that Congress has delegated authority to a federal
8  agency to set rates under a federal statute, as long as the agency has exercised that authority, the
9  rates are just and reasonable as a matter of law and cannot be collaterally challenged under either
10 federal antitrust law or state law. 503 F.3d at 1035. The filed rate doctrine applies to the
11 minimum prices set for raw milk under the FMMOs. Carlin, 705 F.3d at 873.

12 While the FMMO mandates a minimum price, it does not establish a maximum price for
13 milk products. Carlin, 705 F.3d at 860. During periods where milk is relatively scarce, handlers
14 negotiate premiums known as over-order prices for the sale of milk. Id. In denying the motion
15 to dismiss, United States District Judge Jeffrey S. White held that the filed rate doctrine would
16 allow Plaintiffs to recover only the artificial increase in the over-order prices that were above the
17 minimum prices set by the federal milk marketing order. (Order re Mot. to Dismiss
18 Consolidated Complaint 8, Edwards, No. 3:11-cv-04766-JSW (N.D. Cal. Oct. 30, 2012), ECF
19 No. 123.)

20 Petitioners contend that they require CDI to produce the invoices showing the service
21 charges above the FMMO minimum to establish the level of over-order premiums that CDI was
22 able to charge as a result of the nationwide conspiracy and because Defendants operations are
23 focused in other parts of the country.[4] (Am. Mot. to Compel 9, ECF No. 8.) Petitioners are
24 seeking to certify sixteen classes of Plaintiffs, including a class of California residents.
25 Petitioners have received information from Defendants to this action, but this provided useable
26 data in respect to only two cities in California. The data was used by Petitioners' expert to

---

[4] While Petitioners argue that CDI was a member of the conspiracy from the beginning, CDI is not named as a party in the underlying lawsuit and for that reason they are a third party for the purposes of consideration of the motion to compel.

1 calculate over-order premiums during the relevant time period and returned results that were
2 very different from the results found for other areas of the country.  (Id. at 9)

3       In this action, the defendants' milk share is believed to be 29% in the West and 35% in
4 California.  Petitioners contend that CDI's milk share in California is 50%.  (Id. at 10.)

5       Petitioners contend that they require information from another dairy cooperative for their
6 expert to analyze to determine the before and after model of antitrust impact.  Petitioners claim
7 that CDI is the largest dairy cooperative in California and was a member of National Milk
8 Producers Federation at the time the conspiracy is alleged.  (Id. at 11.)

9       Respondent counters that the information sought by the subpoena is commercially
10 sensitive information which is a protectable trade secret and object to providing such information
11 to their primary market competitors.  (Opp. to Pls.' Am. Mot. to Compel 2, ECF No. 9.)
12 Respondent argues that Petitioners' explanation does not justify imposing on a third party the
13 burden of producing commercially sensitive pricing information and trade secrets.  (Id. at 5-6.)  .
14 Further, Respondent claims their market share is much less than that cited by Petitioners.  CDI's
15 market share of the products at issue in this lawsuit for the current year is approximately 10.95%.
16 (Id. at 7.)  CDI argues that it only accounts for about 4.75% of the milk sold in California
17 statewide and the share of the relevant product at issue here would be significantly less.  Since
18 Petitioners already have access to more than a third of the market share in California based on
19 the information provided by Defendants in this action, CDI argues that Petitioners have not come
20 close to meeting their burden to compel a third party to produce commercially sensitive trade
21 secret information.  (Id. at 8.)

22       Additionally, Respondent contends that the doctrine of judicial estoppel should preclude
23 Petitioners from claiming a need for the information where there expert has "repeatedly and
24 strenuously" asserted that his data set is sufficient and his conclusions are sound.  (Id. at 9.)

25       **A.**    **Existing Protective Order**

26       Initially, Petitioners argue that Respondent should be required to produce the information
27 because Respondent can become a party to the protective order that is in place in the underlying
28 action.  Rule 26, which provides for protective orders, addresses "a trade secret or other

1  confidential research, development, or commercial information" by providing that such
2  information "not be revealed or be revealed only in a specified way." Fed. R. Civ. P.
3  26(c)(1)(G). The fact that the information may be covered by a protective order does not address
4  the initial question of whether the information must be produced. Additionally, while Petitioners
5  request the Court to order production because Respondent did not agree to enter into a protective
6  order, Respondent has asserted the confidentiality of the information and Petitioners must first
7  meet their burden to show that Respondent is required to produce the data.

8  Similarly, Petitioners' reliance on cases ordering production by the parties to litigation
9  where a protective order is in existence is misplaced. In this instance, the fact that a protective
10 order is in place in the underlying action does not resolve the issue of whether the non-party is
11 required to produce information that is claimed to be confidential commercial information.

12    **B.    Whether the Information is Protected**

13 To reconcile the competing interests in disputes regarding "a trade secret or other
14 confidential research, development, or commercial information", the party opposing the
15 discovery must first "show that the information is a 'trade secret or other confidential research,
16 development, or commercial information' under Rule 26[ ], and that its disclosure would be
17 harmful to the party's interest in the property. Nat'l Academy of Recording Arts & Sciences,
18 Inc. v. On Point Events, LP, 256 F.R.D 678, 681 (C.D. Cal. 2009).

19 If the party opposing production shows that the information qualifies and disclosure
20 would be harmful, the burden then shifts to the party seeking production "to show that the
21 information is relevant to the subject matter of the lawsuit and is necessary to prepare the case
22 for trial." Nat'l Academy of Recording Arts & Sciences, Inc., 256 F.R.D. at 681. If the party
23 meets this burden the court must then "weigh the injury that disclosure might cause to the
24 property against the moving party's need for the information." Nat'l Academy of Recording Arts
25 & Sciences, Inc., 256 F.R.D. at 681. If the party seeking discovery does not show both the
26 relevance of the information sought and the need for the material, there is no reason for the
27 discovery request to be granted, and the information is not to be revealed. Id.

28

1. <u>Respondent Has Shown that the Information Sought is Commercial Information Entitled to Protection</u>

During the March 26, 2014 hearing, Petitioners conceded that the information requested is sensitive and Respondent has an interest in keeping the information confidential. "Trade secret or commercially sensitive information must be 'important proprietary information" and the party challenging the subpoena must make "a strong showing that it has historically sought to maintain the confidentiality of this information.' " Gonzales, 234 F.R.D. at 684 (quoting Compaq Computer Corp. v. Packard Bell Elec., Inc., 163 F.R.D. 329, 338 (N.D.Cal.1995)). Respondent provides the declaration of Dr. Eric Erba, Sr. Vice President and Chief Strategy Officer for CDI. Dr. Erba states that the information sought is, without limitation, proprietary data which CDI closely safeguards and does not make available to the public. (Decl. of Dr. Eric Erba ¶¶ 12, 13, ECF No. 9-1.) Courts have found that customer lists, vendor lists, and sales and revenue information qualify as confidential commercial information. Nutratech, Inc. v. Syntech (SSPF) Intern., Inc., 242 F.R.D. 552, 555 n.4 (C.D. Cal. 2007). Given the content of the information sought by Petitioners in the subpoena duces tecum, the Court finds that the information does qualify as confidential commercial information under Rule 26(c)(1)(G).

In the reply, Petitioners contend that CDI has not shown that release of the data would be harmful to its interests. (Reply 4, ECF No. 10.) However, CDI's position has been and continues to be that it would be harmed by releasing the pricing data and formula to its direct competitors. In his declaration, Dr. Erba stated that CDI "would be significantly and immediately harmed if its proprietary information, including, without limitation, milk pricing data, became known to the public, because this would potentially allow competitors to undercut their prices and proprietary milk pricing formulae. Additionally, Dr. Erba claims that the disclosure of the information would be harmful because CDI's customers expect their information to be kept confidential and do not want such information released and available for public consumption. (Decl. of Dr. Eric Erba at ¶ 13, ECF No. 9-1.) Respondent has sufficiently alleged that it would harmed by release of the information sought by the subpoena in that such information could be used by its competitors to undercut their prices and milk pricing formulae.

1  The Court finds that Respondent has met its burden of showing that the information sought is confidential commercial information entitled to protection and it would suffer harm from the release of the information.

### 2. Petitioners Have Not Met Their Burden to Show that Their Need for the Information Outweighs Respondents Interest in the Confidentiality of the Information

As Respondent has shown that the information is confidential commercially sensitive information and it would be harmed by the release of the information, the burden now shifts to Petitioners to show a "substantial need for the [ ] material that cannot be otherwise met without undue hardship. . . ." Gonzales, 234 F.R.D. at 684.  The parties do not dispute the relevance of the discovery sought.  At issue here is the requesting party's need for the information.

Whether the information sought is necessary to the case "is satisfied where the party's claim or defense 'virtually rises or falls with the admission or exclusion of the proffered evidence.' " In re National Gas Commodities Litigation, 235 F.R.D. 241, 244 (S.D. N.Y. 2006) (quoting In re Application to Quash Subpoena to Nat'l Broadcasting Co., 79 F.3d 346, 351 (2d Cir.1996)).  The determination of substantial need is especially important in the context of enforcing a subpoena where confidential commercial information is sought from a non-party. Gonzales, 234 F.R.D. at 685.

In this national class action lawsuit, Petitioners' expert has compiled data from across the nation on over-order premiums and Petitioners argue that the data for California showed an unusual price trend.  During the March 26, 2014 hearing, Petitioners' counsel argued that they have a need for the information because this class action involves sixteen jurisdictions, one which includes California.  Petitioners' expert evaluated data from the jurisdictions and the data provided from Defendants for California produced results that were inconsistent with other jurisdictions, Petitioners are seeking information from Respondent to confirm that their expert's results are accurate.  A review of the data compiled by Petitioners' expert shows that the over-order premium ranged from a negative amount per 100 weight in the Pacific Northwest to $.97 per hundred weight in Florida.  (Exhibit J, attached to ECF No. 8-3 at 61.)  Petitioners seek additional data for California, which showed an over-order premium of approximately $.045 per

hundred weight, to determine whether the results that were received for California were sound. (ECF No. 8 at 9.)

Petitioners also contend that they need information from CDI because CDI is the largest milk producer in California. (ECF No. 8 at 10.) While Petitioners contend that CDI produces almost 50% of the milk in California, in support of this contention, Petitioners cite to a website address which does not produce the referenced article. Further, Petitioners did not provide the date the article was published or a copy of the article for the court to reference.

CDI replies that the Defendants to the underlying action sell significant amounts of milk in California and account for approximately 35% of the milk sales in the State.[5] (Decl. of Dr. Eric Erba ¶¶ 9, 10, ECF No. 9-1.) CDI argues that while its market share in California is substantial, the market share sold to Class 1 and Class 2 customers is only about 11%, and the amount sold in California would be approximately 5%. (Id. at ¶¶ 16, 17.) Some of this milk would include use for products that are not at issue in this lawsuit. (Id. at ¶ 16.)

In this instance, the Court agrees with Respondent that Petitioners have not met their burden to show that the information requested is necessary in this action when they have the nationwide data on milk pricing and Defendants to the underlying action account for approximately 35% of the milk sales in California. While Petitioners contend that CDI has a larger share of the California market, the evidence before the Court shows that CDI would only account for approximately 5% of the milk sales to Class 1 and Class 2 customers which is at issue in this action.

Balancing the relevance of the discovery sought and Petitioners' need for the information against the potential hardship to non-party CDI in being required to turn over commercially sensitive trade secret information, without a stronger showing that the information is necessary in this action, non-party CDI's interest in the confidentiality of the information outweighs Respondents need for the information. Accordingly, the motion to compel production shall be

---

[5] Petitioners' expert states that Defendant DFA's share of the market in the west is 29%, which Petitioners concede is not inconsistent with CDI's assertion that the combined market share of Defendants DFA and LOL in California is 35%. (ECF No. 8 at 10.)

denied.[6]

## IV.

## CONCLUSION AND ORDER

Based on the foregoing, IT IS HEREBY ORDERED that Petitioners' motion to compel is DENIED.

IT IS SO ORDERED.

Dated: __May 30, 2014__

UNITED STATES MAGISTRATE JUDGE

---

[6] Since the Court is denying the motion to compel, it shall not address Respondent's argument that judicial estoppel bars Petitioners from asserting they require the information from CDI.